[No. 361-2. Division Two. December 17, 1971.]

J.S.K. ENTERPRISES, INC., *Appellant,* v. THE CITY OF LACEY, *Respondent.*

44

*Anthony T. Ressa,* for appellant.

*Argal D. Oberquell,* for respondent.

ARMSTRONG, J.—The plaintiff commenced this action against the City of Lacey to declare invalid an ordinance which amends a prior ordinance regulating the operation of massage parlors, to restrain the city from enforcing the ordinance, and to seek damages for interfering with the operation of plaintiff's business. At the conclusion of the

plaintiff's case the defendant city moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted. This motion was primarily grounded upon the validity of ordinance No. 139 as a reasonable exercise of the police power of the city. After considering the evidence the court entered findings of fact and conclusions of law dismissing the amended complaint. Although the court stated: "there is no way this court will grant a money judgment in favor of plaintiffs and against the defendant city", it is not clear whether that statement and the conclusion that the plaintiff failed to state a claim upon which relief can be granted were predicated upon the assumed validity of ordinance No. 139. Plaintiff appeals from the dismissal of its case.

The plaintiff was licensed under ordinance No. 86 to conduct a sauna parlor in the city of Lacey in 1968, 1969 and 1970. The license was renewed by the city on February 18, 1970—2 months before the enactment of ordinance No. 139. The court found, and the evidence disclosed, that the city has not conducted a harassment program against the plaintiff but has, over the last 2 years, conducted an investigation of plaintiff's Royal Sauna and one other sauna located in the city of Lacey. There was substantial evidence to justify the court's finding that a sauna massage business, such as that conducted by the plaintiff, is a potential setting for lewd and immoral acts and can and does attract people interested in lewd and immoral acts. The plaintiff has conducted its business with a certain degree of emphasis on sex and as a result has contributed to the setting of a background for lewd and immoral acts to be possibly permitted or performed on the premises.

In support of the court's findings there is evidence that sexually provocative advertising was carried in the classified advertising columns of the Daily Olympian, the masseuses wore mini skirts and low cut blouses, and talked and acted in a sexually provocative manner. They adopted what they termed "nicknames" for their professional service.

Undercover agents were employed to obtain massages at

the plaintiff's Royal Sauna as well as the other sauna that is no longer in operation in the city of Lacey. For a fee of $20 they received what the police chief modestly referred to as a "lower abdominal massage."

The evidence clearly established that lewd acts occurred at the Royal Sauna before the amendment of ordinance No. 86 and before and after the Royal Sauna received its last license. There were no cases brought to trial for anything other than the failure of one masseuse to have a valid license. There were no convictions of lewdness relating to this sauna although the statements of police officers and reports of undercover agents clearly described acts of lewdness for which the masseuses, if convicted, could have been jailed for terms up to 6 months and fined up to $500 under the city statute relating to lewd acts.

On April 23, 1970 the Lacey City Council adopted ordinance No. 139 as an amendment to ordinance No. 86. That amendment permits massagists to administer massages only to customers of their own sex; except that a person of the opposite sex may administer treatment in good faith in the course of practice of any healing art or profession provided for under RCW Title 18, relating to businesses or professions. Massage or massotherapy is not specifically included in the healing arts covered in that section although it is utilized in varying degrees by several classifications which are licensed.

The trial court held that (1) ordinance No. 139 is a legitimate exercise of the police power of the City of Lacey; (2) it regulates sauna and massage parlor businesses but does not prohibit them; (3) the fact that a regulatory ordinance changes the nature of the business by its regulation does not make it discriminating; (4) the ordinance is clear and not ambiguous; (5) it is not class legislation; (6) it is not discriminating to women in violation of RCW 49.12.200; and (7) the plaintiff failed to state a claim upon which relief can be granted.

The plaintiff contends that ordinance No. 139 is an unreasonable imposition of police power which resulted in a de-

nial of due process, and equal protection under the fourteenth amendment to the United States Constitution and that RCW 49.12.200, relating to the right of women to pursue any employment, prohibits the enactment of the ordinance.

 It has been established that a city, in the exercise of its police power, may regulate massagists on the grounds of public health, safety and morality. *See* Annot., *Regulations of masseurs,* 17 A.L.R.2d 1183 (1951). As in any other exercise of the police power the means adopted must be reasonably necessary and appropriate to accomplish the objective sought and it must not be unduly oppressive upon individuals. *Seattle v. Proctor,* 183 Wash. 293, 48 P.2d 238 (1935). In addition to those tests, the police power regulation is subject to the provisions of the state and federal constitutions which prohibit the granting of special privileges and immunities and guarantee equal protection of the laws, require that class legislation must apply alike to all persons within a class, and reasonable ground must exist for making a distinction between those within and those without a designated class. Within the limits of such restrictive rules, the legislative body has a wide measure of discretion and its determination cannot be successfully attacked unless it is manifestly arbitrary, unreasonable, inequitable and unjust. *State ex rel. O'Brien v. Towne,* 64 Wn.2d 581, 392 P.2d 818 (1964).

At the outset we must agree that all of the court's conclusions can be sustained if we were to adopt the rationale of *In re Maki,* 56 Cal. App. 2d 635, 133 P.2d 64 (1943), the leading case on this subject. The rationale of *Maki* was adopted in *Cheek v. Charlotte,* 273 N.C. 293, 160 S.E.2d 18 (1968) and in other cases.

In *Maki* the court upheld the constitutionality of a city ordinance which forbade any person, for hire or reward, to administer a massage to a person of the opposite sex unless the massage be given under the supervision of a licensed physician. The appellant there, as here, contended that the ordinance was an unreasonable exercise of the police

power, was sexual discrimination of the right to employment, denied him the equal protection of the laws, and deprived him of property without due process of law. In declaring the ordinance constitutional, the California Court of Appeals stated in *In re Maki, supra* at 639, 643 and 644:

> The ordinance applies alike to both men and women. . . . The barrier erected by the ordinance against immoral acts likely to result from too intimate familiarity of the sexes is no more than a reasonable regulation imposed by the city council in the fair exercise of police powers. . . . [133 P.2d at 67].
>
> . . .
>
> . . . The reasonable exercise of the police power in regulating any occupation in order to maintain the moral welfare does not arbitrarily deprive a person so engaged of his property. . . . Enactments that curb the vicious or restrain the wicked necessarily restrict the emoluments of his enterprise. However, such results are not to be considered in determining the validity of a law.
>
> . . .
>
> There is nothing in the ordinance that denies the equal protection guaranteed by the Fourteenth Amendment. It applies to all alike who give massages for hire and who are not licensed to practice one of the arts of healing. [133 P.2d at 68-69].

The trial judge accepted this rationale in his analysis and oral decision. We have set forth in the footnote a portion of his analysis and his own viewpoint of the ordinance in question.[1]

We decline to follow the doctrine of *Maki* because

---

[1] "Now the most difficult question here to me was whether this ordinance as it now stands is discriminatory to one sex or the other or discriminatory to massagists or masseuses; and whether it is discriminatory and contrary to RCW 49.12.200, which provides for equal employment rights for women, for their wages and professional and vocational opportunities. In careful consideration and study of this statute and this ordinance, I have come to the conclusion that Ordinance 139 governs all men and women, all persons, regulates all massagists, whether male or female, does not regulate the pursuance of a vocation, but rather, regulates the practice of a vocation for those who are already in that vocation or choose to join it, whether they be men or women. And it is with that in mind that I have come to the

the 1943 decision of the California Court of Appeals does not recognize the economic, social and legal rights of women and the right of both men and women to be free from sex discrimination in employment as such rights exist today. The doctrine of that case permits an unreasonable exercise of police power that unnecessarily goes beyond the objective of protecting the public from lewd acts in sauna massage parlors; under the guise of regulation it denies *all* massagists the right to treat members of the opposite sex. This is the blanket-type classification by sex which is prohibited by the equal protection clause of the fourteenth amendment to the United States Constitution.

At the time this case was argued before our court the Supreme Court of the United States had consistently held that sex is a valid basis for classification. *Muller v. Oregon,* 208 U.S. 412, 422, 52 L. Ed. 551, 28 S. Ct. 324 (1908); *Goesaert v. Cleary,* 335 U.S. 464, 69 S. Ct. 198, 93 L. Ed. 163 (1948). The weight of authority, in state as well as federal

conclusion that Ordinance 139 squares itself with RCW 49.12.200 and is not discriminatory. And those findings and comments lead me to the conclusion that Ordinance 139 is legal and is constitutional and should stand.

"Now I want to make some more comments about it though:

"This was a difficult decision for me because I frankly feel this is a lousy ordinance and that it is not the best way to attack the problem that is presented. This attacks a legitimate business through the back door in order to get at the businesses that are not run legitimately, and it makes a legitimate massage parlor suffer needlessly, it seems to me, for the acts of parlors that are run contrary to law. And it seems to me it would be much better if the City of Lacey or the State, hopefully, would regulate the giving of massages in detail, including licensing practices of course, the dress for both the massagist and the customer, the surroundings; massage parlors can properly be regulated. Lewd acts in this connection should be defined in more detail. And when the ground rules are carefully laid, so that the operator such as Mrs. Sherlie here and other operators know exactly what they can and cannot do, this should be followed with vigorous enforcement and vigorous prosecution of any who then violate the rules set up. And all I am saying is that the avenue chosen by the City of Lacey is in my opinion not the best avenue available for the eradication of potential social ill. But I feel and believe and find that it is a legally acceptable avenue to control this particular business which needs regulation."

courts, recognized the principle of "reasonableness" of sex discrimination as the basis of legitimate public policy.[2] Several state courts had decided that such classification was not in fact permissible. *Ritchie v. People*, 155 Ill. 98, 40 N.E. 454 (1895); *Paterson Tavern & Grill Owners Ass'n v. Hawthorne*, 57 N.J. 180, 270 A.2d 628 (1970). Two federal cases had attacked sexual discrimination in cases based upon Title 7 of the Civil Rights Act of 1964. *Weeks v. Southern Bell Tel. & Tel. Co.*, 408 F.2d 228 (5th Cir. 1969); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969). *Weeks* noted that such classifications generally are based upon stereotyped characterizations of females as a class. *Bowe* also attacked discriminatory stereotyped conceptions and required a "highly individualized test" for women in employment applications. The culmination of judicial attacks upon sexual discrimination in employment was reached in the historic decision of *Reed v. Reed*, 404 U.S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971). That case, decided shortly after the argument on the instant case in our court, brought the question of discrimination by reason of sex within the ambit of the equal protection clause of the fourteenth amendment to the United States Constitution.

In *Reed* the United States Supreme Court held that a mandatory provision of the Idaho probate code that gives preference to men over women when persons of the same entitlement class apply for appointment as administrator of a decedent's estate is based upon a discrimination prohibited by the equal protection clause of the Fourteenth Amendment. In referring to the equal protection clause the court stated at page 75:

> In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations omitted.] The Equal

---

[2]For comprehensive analyses of the entire area of sex discrimination in employment *see Sex Discrimination in Employment: A Survey of State and Federal Remedies*, 20 Drake L. Rev. 417 (1971); *Symposium —Women and the Law*, 5 Valparaiso U. L. Rev. 203 (1971).

Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415 (1920). The question presented by this case, then, is whether a difference in the sex of competing applicants for letters of administration bears a rational relationship to a state objective that is sought to be advanced by the operation of §§ 15-312 and 15-314.

In upholding the latter section, the Idaho Supreme Court concluded that its objective was to eliminate one area of controversy when two or more persons, equally entitled under § 15-312, seek letters of administration and thereby present the probate court "with the issue of which one should be named." The court also concluded that where such persons are not of the same sex, the elimination of females from consideration "is neither an illogical nor arbitrary method devised by the legislature to resolve an issue that would otherwise require a hearing as to the relative merits . . . of the two or more petitioning relatives. . . ." 93 Idaho, at 514, 465 P.2d, at 638.

Clearly the objective of reducing the workload on probate courts by eliminating one class of contests is not without some legitimacy. The crucial question, however, is whether § 15-314 advances that objective in a manner consistent with the command of the Equal Protection Clause. We hold that it does not. To give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment; and whatever may be said as to the positive values of avoiding intrafamily controversy, the choice in this context may not lawfully be mandated solely on the basis of sex.

This state has prohibited sex discrimination against women in employment since 1890. In 1963 the legislature

strengthened the statute which provided that women may pursue any calling open to men. RCW 49.12.200 now provides:

That hereafter in this state every avenue of employment shall be open to women; and any business, vocation, profession and calling followed and pursued by men may be followed and pursued by women, and no person shall be disqualified from engaging in or pursuing any business, vocation, profession, calling or employment or excluded from any premises or place of work or employment on account of sex.

The trial court held that since women massagists could massage women and men massagists could massage men, both sexes were treated equally. We think that since the equal protection clause of the Fourteenth Amendment forbids a determination based solely upon sex, this argument becomes analogous to the rule of *Plessy v. Ferguson,* 163 U.S. 537, 41 L. Ed. 256, 16 S. Ct. 1138 (1896). In that case the Supreme Court held that the enforced separation of the races, as applied to the internal commerce of the state in transportation, neither abridges the privileges and immunities of the Negro, deprives him of his property without due process of law, nor denies him the equal protection of the laws. Under that doctrine, equality of treatment is accorded when the races are provided substantially equal facilities, even though these facilities be separate.

The concept of "separate but equal" was rejected in *Brown v. Board of Educ.,* 347 U.S. 483, 98 L. Ed. 873, 74 S. Ct. 686, 38 A.L.R.2d 1180 (1954) in the field of education. The decision in the *Brown* case and in subsequent decisions rejecting the "separate but equal" doctrine in other fact settings vindicate Mr. Justice Harlan's dissent in *Plessy v. Ferguson, supra,* where he said: "Our Constitution is color-blind, and neither knows nor tolerates classes among citizens."

We believe that "separate but equal" opportunities of employment for men and women are not justified unless the difference in classification as to sex bears a rational

relationship to the objective that is sought to be advanced and is not unreasonable, unnecessary, arbitrary or unduly oppressive. No longer can we accomplish that by "drawing a sharp line between the sexes" as the United States Supreme Court authorized in *Goesaert v. Cleary, supra.* The rule of *Plessy v. Ferguson, supra* is not a viable doctrine with respect to sex segregation.

In *Paterson Tavern & Grill Owners Ass'n v. Hawthorne, supra,* the Supreme Court of New Jersey recognized the differences in the times and the economic and social rights of women between 1948 and 1970. That case declined to follow the United States Supreme Court opinion in *Goesaert* and held that a municipal ordinance which prohibited licensed taverns from employing female bartenders did not constitute a necessary and reasonable exercise of the police power. We concur in the rationale expressed in *Paterson,* where the Supreme Court of New Jersey stated at page 189:

> We are satisfied that Hawthorne's prohibition of female bartenders is unreasonable and goes beyond any public need. It is blanket in nature and seeks to exclude female bartenders, no matter how individually qualified, from all licensed establishments, no matter how suitably conducted. While the law may look to the past for the lessons it teaches, it must be geared to the present and towards the future if it is to serve the people in just and proper fashion. In the current climate the law may not tolerate blanket municipal bartending exclusions grounded solely on sex.

If we were interpreting RCW 49.60.180,[3] relating to unfair employment practices, we would apply the logical ra-

[3] RCW 49.60.180 provides: "It is an unfair practice for any employer:

"(1) To refuse to hire any person because of such person's age, sex, race, creed, color, or national origin, unless based upon a bona fide occupational qualification.

"(2) To discharge or bar any person from employment because of such person's age, sex, race, creed, color, or national origin.

"(3) To discriminate against any person in compensation or in other terms or conditions of employment because of such person's age, sex, race, creed, color, or national origin: PROVIDED, That it shall not be an unfair practice for an employer to segregate washrooms or locker facilities on the basis of sex, or to base other terms and conditions of

tionale of *Weeks v. Southern Bell Tel. & Tel. Co., supra* and *Bowe v. Colgate-Palmolive Co., supra.* Our state statute and the statutes considered in the two federal cases were concerned with whether employment is within the "bona fide occupational qualification" exception to a civil rights act prohibiting discrimination in employment because of sex. The existing state statute was amended in 1971 after the date of the trial of this case. The significant amendment was the addition of the word "sex". The statutory amendment in 1971 demonstrates the increased awareness of the problem of discrimination on the basis of sex. We do not directly apply the statute because it relates to employment practices, and not police power. We note, however, that if the ordinance was held to be a valid exercise of the police power the employer would be violating the law if it complied with the ordinance, unless the administration of massages only to persons of the opposite sex was deemed a bona fide occupational exception to the sex discrimination prohibited by the statute.

 There is a similarity in the issue of determining whether an employment classification based upon sex is a reasonable exercise of the police power and is not forbidden by the equal protection clause of the Fourteenth Amendment and whether a classification based upon sex violates the state and federal civil rights acts because it is not a bona fide occupational exception to the sex discrimination prohibited by statute. Because of the explicit statu-

---

employment on the sex of employees where the board by regulation or ruling in a particular instance has found the employment practice to be appropriate for the practical realization of equality of opportunity between the sexes.

"(4) To print, or circulate, or cause to be printed or circulated any statement, advertisement, or publication, or to use any form of application for employment, or to make any inquiry in connection with prospective employment, which expresses any limitation, specification or discrimination as to age, sex, race, creed, color, or national origin, or any intent to make any such limitation, specification or discrimination, unless based upon a bona fide occupational qualification: PROVIDED, Nothing contained herein shall prohibit advertising in a foreign language."

tory language and commission guidelines we do not find that the tests are identically the same. We do find applicable to both the admonition of *Weeks* that the principle of non-discrimination requires that individuals be considered on the basis of individual capacities and not on the basis of a stereotyped characterization attributed to women as a group. Of course the same principle is applicable to men. *Bowe* also emphasized the necessity to consider individual qualifications and conditions, and stressed the necessity of each employee being afforded a reasonable opportunity to demonstrate his or her ability. We believe these requirements of establishing the principle of nondiscrimination on the basis of sex are equally applicable to a consideration of whether an ordinance is a reasonable exercise of the police power and does not offend the equal protection clause of the Fourteenth Amendment.

With these principles in mind we shall analyze the facts of our case. We find that under the express terms of the original ordinance (No. 86), a license could be denied upon proof that the health, safety and morals of the community may be harmed by issuance of the license. After the issuance of a license the city had authority to revoke the license if the licensee was charged with committing acts of prostitution or related offenses. Without resorting to the full details of the sexual behavior of the masseuses and the type of massage administered for $20, it is obvious that their activities would classify as acts related to prostitution. We conclude that even prior to the questioned amendment of ordinance No. 86 the city had existing authority to deny or revoke a license to the Royal Sauna. The trial court's suggestions could have been followed to strengthen the ordinance if the city council deemed strengthening to be necessary.

Massage is one of the oldest forms of therapy. When properly administered in an appropriate case, it can be one of the most useful forms of therapy. To deny all massagists the right to practice their profession upon both sexes because some individuals utilize a sauna massage parlor as a

subterfuge to perform lewd acts for compensation would require stereotyping of the worst kind. It is saying, in effect, that because some women perform lewd acts in sauna parlors that all massagists can be judged to be lewd if given the opportunity and therefore they cannot massage members of the opposite sex. Not only is this discrimination as to both sexes of massagists but it would deny the people who need their services the opportunity to select the best qualified massagist available to them.

We therefore hold that ordinance No. 139, enacted by the City of Lacey, is an unreasonable and arbitrary exercise of the police power. It goes beyond the means reasonably necessary and appropriate to accomplish its objective and it is unduly oppressive to massagists and their patients. Because it prohibits all massagists, not licensed under one of the other healing arts, from performing massages upon the opposite sex, without a reasonable basis for such a mandate, it constitutes discrimination on the basis of sex in contravention of the equal protection clause of the fourteenth amendment to the United States Constitution.

Reversed as to the validity of the challenged ordinance and remanded for clarification of the findings of fact and conclusions of law on the issue of damages, or for such other action as the trial court may deem appropriate.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied February 7, 1972 (see 6 Wn. App. 433).

Review denied by Supreme Court March 21, 1972.