[No. 43276. En Banc. September 25, 1975.]

RUSSEL DARRIN *et al, as Guardians, Appellants,* v. H. D. GOULD *et al, Respondents.*

*Mary E. Howell* and *John Wolfe,* for appellants.

*Lycette, Diamond & Sylvester,* by *John N. Sylvester* and *John T. Petrie,* for respondents.

HOROWITZ, J.—This case involves a claim of illegal discrimination against girls in the field of high school interscholastic football competition. The trial court denied relief against the discrimination claimed and this appeal followed.

The question is whether a school district operating a high school in this state may constitutionally deny two of its fully qualified high school students permission to play on

the high school football team in interscholastic competition solely on the ground the students are girls. We hold the denial a prohibited discrimination based on sex and reverse.

Carol and Delores Darrin were students at the Wishkah Valley High School in Grays Harbor County, Washington, during the fall of 1973. Carol was then a junior, 16 years of age, 5 feet 6 inches tall, weighing about 170 pounds. Delores was then a freshman, 14 years of age, 5 feet 9 inches tall, weighing about 212 pounds. The girls wished to play contact football. The high school had no girls' contact football team. The school did, however, have a high school football team eligible for interscholastic competition, all members of the team being boys. The high school football coach found both girls complied with all eligibility requirements and permitted them to play on the team in practice sessions. The girls passed the required physical examinations, met the medical insurance requirements and played the necessary number of practice sessions required by the rules of the Washington Interscholastic Activities Association (WIAA) for football players.

WIAA is an association of approximately 600 high school and junior high schools, comprising most, if not all, the high schools in the state. Through their elected representatives, the member schools have adopted rules and regulations governing sports and other activities. Wishkah Valley School District is a member of the association. Such membership, the court found, "is a practical necessity for any school which desires to participate in interscholastic sports."

Just prior to the start of the football season, WIAA informed the football coach that WIAA regulations prohibited girls from participating in interscholastic contact football on boys' teams. For that reason only, the school board of the Wishkah Valley School District prohibited the Darrin girls from playing on the high school team. Indeed, the court found:

According to their coach, both of the girls have in general been able to hold their own with the boys in practice sessions and would be allowed to play in interscholastic contests were it not for the W.I.A.A. regulation.

Finding of fact No. 4.

On September 21, 1973, the Darrin girls' parents sued defendants on behalf of the Darrin girls individually and on behalf of all others similarly situated pursuant to CR 23. The purpose of the suit was to enjoin the enforcement of the WIAA rule involved and to enjoin defendants from interfering with the Darrin girls' participation as a member of the football team in the school's upcoming September 22 football game. The court denied any relief. This appeal followed.

## QUESTIONS PRESENTED

Appellants assign error to certain findings of fact and conclusions of law as noted in the margin.[1] The issues we deem controlling presented by such assignments are later considered.

Two basic questions arise:

1. Does the denial of permission to the Darrin girls to play on the boys' high school football team in interscholastic competition constitute a discrimination by state action based on sex per se or is the denial based on inability to play?

2. If the denial is a discrimination based on sex per se is it prohibited by law, constitutional, statutory, or both?

Preliminarily, it is necessary to discuss procedural obstacles to a consideration of the merits of this case. Plaintiffs purport to sue on behalf of themselves and, pursuant to CR 23, on behalf of all others similarly situated. The trial court nevertheless treated the action solely as a class action val-

[1] The findings and conclusions challenged are too lengthy to quote. However, we hold substantial evidence supports challenged findings 6 and 8. Challenged findings 7, 9, and 10 and conclusions of law, 2, 4, 5 and 6 are either not supported in whole or in part, or, in important respects are immaterial or incorrect in light of the legal principles applicable as later discussed.

idly brought notwithstanding there had been no compliance with requirements of CR 23(c), (d). 3B J. Moore, *Federal Practice* ¶ 23.01 [11.-1], ¶ 23.60, at 23-1203 (2d ed. 1974); 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1789 (1972). The judgment defines the class as:

all present or future junior and senior high school girls in this state who either now or in the future shall desire to participate in interscholastic contact football on the boys' teams . . .

The Darrin girls have not assigned any error to the court's findings, conclusion, or judgment defining the class.

If, therefore, we treat the action both as an individual action and as an unchallenged class action, it is still necessary to determine with greater precision the nature of the class in light of the theory upon which the action was tried, especially because of the absence of compliance with CR 23(c), (d). There is no claim relief was sought for members of the class who were unqualified to play. Indeed, unqualified girls would not be "similarly situated" to the Darrin girls. We construe the true and intended nature of the class to be the high school girls described in the class who are qualified to play. *See LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 496 P.2d 343 (1972); *Stratton v. United States Bulk Carriers, Inc.*, 3 Wn. App. 790, 478 P.2d 253 (1970).

With the class so defined, the answers to the two basic questions involved will be the same whether the action be treated as a class action or one brought on behalf of the Darrin girls individually.[2]

---

[2]The heading in the complaint describes plaintiffs as "Guardians of Delores Darrin and Carol Darrin." There is neither allegation, nor evidence nor findings plaintiffs were court appointed guardians of their daughters. The case was apparently tried as if the Darrin girls were the true plaintiffs or as if their parents were their guardians ad litem. No issue has been raised below or on appeal concerning the propriety of treating the Darrin girls as the true plaintiffs. We so treat them for purposes of this appeal. *See Stratton v. United States Bulk Carriers, Inc.*, 3 Wn. App. 790, 478 P.2d 253 (1970). Moreover, the defense of mootness (not raised) is either unavailable (*Sosna v. Iowa*, 419 U.S.

## CONSTITUTIONAL AND STATUTORY PRINCIPLES
### APPLICABLE

Resolution of the issues argued requires we first discuss the relevant federal and state constitutional and statutory provisions before they are applied to the facts of the instant case.

Whatever may have been the former law (*see Singer v. Hara*, 11 Wn. App. 247, 258, 522 P.2d 1187 (1974)), when the Darrin girls in the fall of 1973 were denied permission to play on the high school football team, Washington's constitutional and statutory law expressly forbade discrimination based on sex. Const. art. 31; Const. art 9, § 1; RCW 49.60, particularly RCW 49.60.010, .030. *See also Hanson v. Hutt*, 83 Wn.2d 195, 201, 517 P.2d 599 (1973); *J.S.K. Enterprises, Inc. v. Lacey*, 6 Wn. App. 43, 492 P.2d 600 (1971). We shall shortly discuss these constitutional and statutory provisions.

▪ We must consider first to what extent sex discrimination was forbidden by the equal protection clauses of the Fourteenth Amendment and corresponding article 1, section 12 of the state Constitution. The equal protection clause of the Fourteenth Amendment as construed by the Supreme Court of the United States has been increasingly and somewhat more aggressively used to invalidate classifications based on sex in determining whether there exists a rational relationship between the classification and the lawfully permissible object of the statute.[3] As *Reed v. Reed*,

393, 42 L. Ed. 2d 532, 95 S. Ct. 553 (1975)), or unacceptable. *Hartman v. State Game Comm'n*, 85 Wn.2d 176, 532 P.2d 614 (1975); *Sorenson v. Bellingham*, 80 Wn.2d 547, 496 P.2d 512 (1972).

[3]*Stanton v. Stanton*, 421 U.S. 7, 43 L. Ed. 2d 688, 95 S. Ct. 1323 (1975); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 43 L. Ed. 2d 514, 95 S. Ct. 1225 (1975); *Frontiero v. Richardson*, 411 U.S. 677, 36 L. Ed. 2d 583, 93 S. Ct. 1764 (1973); *Reed v. Reed*, 404 U.S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971).

As stated in *Reed v. Reed, supra* at 76:

A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co.* v. *Virginia*, 253 U. S. 412, 415 (1920).

404 U.S. 71, 77, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971) states: "dissimilar treatment for men and women who are thus similarly situated . . . violates the Equal Protection Clause."

A special constitutional standard of review is used if the statutory classification attacked as discriminatory under the equal protection clause involves a "suspect" class or involves a "fundamental right" explicitly or implicitly guaranteed by the United States Constitution. In such cases the classification which allegedly violates equal protection is subject to "strict scrutiny." When strict scrutiny is involved, the classification will be upheld only if the state makes a showing of a compelling state interest to justify the classification. *Dunn v. Blumstein*, 405 U.S. 330, 31 L. Ed. 2d 274, 92 S. Ct. 995 (1972); *Kramer v. Union Free School Dist. 15*, 395 U.S. 621, 627, 23 L. Ed. 2d 583, 89 S. Ct. 1886 (1969); *Shapiro v. Thompson*, 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969).

Suspect classifications have been held to exist when based on race, alienage and national origin.[4] The Supreme Court of the United States has not yet held classifications based on sex to be "suspect." However, as many as four

It has been suggested that there be recognized a so-called "invigorated" rational relationship test which calls for "modest interventionism." *See* Gunther, *The Supreme Court, 1971 Term, Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv. L. Rev. 1 (1972). However, the Supreme Court decisions since the suggestion was published have not adopted this test. *Citizens Comm. for Faraday Wood v. Lindsay*, 507 F.2d 1065, 1068 (2d Cir. 1974) (decided December 5, 1974); Note, *Boraas v. Village of Belle Terre: The New, New Equal Protection*, 72 Mich. L. Rev. 508, 551 (1974). In this case the result we later reach is the same even if the Gunther suggestion were adopted.

[4]*Graham v. Richardson*, 403 U.S. 365, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (1971) (alienage); *Loving v. Virginia*, 388 U.S. 1, 18 L. Ed. 2d 1010, 87 S. Ct. 1817 (1967) (race); *McLaughlin v. Florida*, 379 U.S. 184, 13 L. Ed. 2d 222, 85 S. Ct. 283 (1964) (race); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 92 L. Ed. 1478, 68 S. Ct. 1138 (1948) (alienage); *Oyama v. California*, 332 U.S. 633, 92 L. Ed. 249, 68 S. Ct. 269 (1948) (national origin); *cf. Korematsu v. United States*, 323 U.S. 214, 89 L. Ed. 194, 65 S. Ct. 193 (1944) (national origin).

Justices of the Supreme Court have been prepared to so hold. *See Frontiero v. Richardson*, 411 U.S. 677, 36 L. Ed. 2d 583, 93 S. Ct. 1764 (1973); *Schlesinger v. Ballard*, 419 U.S. 498, 42 L. Ed. 2d 610, 95 S. Ct. 572 (1975); *cf. Stanton v. Stanton*, 421 U.S. 7, 43 L. Ed. 2d 688, 95 S. Ct. 1373 (1975).

Classifications involving fundamental rights explicitly or implicitly guaranteed by the United States Constitution have included interstate travel, voting, freedom of expression and procreation.[5] The Supreme Court of the United States, however, has refused to hold that education is a fundamental right implicitly guaranteed by the United States Constitution so as to require application of the strict scrutiny test when a classification is challenged as a denial of equal protection. *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 33-40, 36 L. Ed. 2d 16, 93 S. Ct. 1278 (1973).

Thus, according to the Supreme Court of the United States, although a classification based on sex may not be subject to "strict scrutiny" when attacked as prejudicial under the Fourteenth Amendment, it may still be attacked by applying the usual rational relationship test.

In the field of athletic competition involving men and women or boys and girls, sex classifications have been held invalid under equal protection analysis.[6] Most cases invali-

[5]Note the holdings or rationale of *Police Dep't v. Mosley*, 408 U.S. 92, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972) (freedom of expression); *Dunn v. Blumstein*, 405 U.S. 330, 31 L. Ed. 2d 274, 92 S. Ct. 995 (1972) (voting and travel); *Kramer v. Union Free School Dist. 15*, 395 U.S. 621, 627, 23 L. Ed. 2d 583, 89 S. Ct. 1886 (1969) (voting); *Shapiro v. Thompson*, 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969) (travel); *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 16 L. Ed. 2d 169, 86 S. Ct. 1079 (1966) (voting); *Reynolds v. Sims*, 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362 (1964) (voting); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 86 L. Ed. 1655, 62 S. Ct. 1110 (1942) (procreation).

[6]A. Babcock, A. Freedman, E. Norton, & S. Ross, *Sex Discrimination and the Law: Causes and Remedies*, 1020-33 (1975); Todd, *Title IX of the 1972 Education Amendments: Preventing Sex Discrimination in Public Schools*, 53 Texas L. Rev. 103 (1974); Note, *The Case for Equality in Athletics*, 22 Clev. St. L. Rev. 570 (1973); Note, *Sex*

dating sex classifications in sports, including interscholastic competition in high school athletics, have used the rational relationship test. *Brenden v. Independent School Dist. 742,* 477 F.2d 1292 (8th Cir. 1973), *aff'g* 342 F. Supp. 1224 (D. Minn. 1972); *Morris v. Michigan Bd. of Educ.,* 472 F.2d 1207 (6th Cir. 1973); *Reed v. Nebraska School Activities Ass'n,* 341 F. Supp. 258 (D. Neb. 1972); *Haas v. South Bend Community School Corp.,* 259 Ind. 515, 289 N.E.2d 495 (1972). *But see Gilpin v. Kansas State High School Activities Ass'n,* 377 F. Supp. 1233 (D. Kan. 1974) (sex classification held suspect and subject to strict scrutiny).

Some cases have invalidated gender-based distinctions in school athletic competition when a team for the sport involved was provided only for boys, *e.g., Haas v. South Bend Community School Corp., supra.* Other cases have upheld sex classification in athletic competition when separate teams were provided for boys and for girls. *Ritacco v. Norwin School Dist.,* 361 F. Supp. 930 (W.D. Pa. 1973); *Bucha v. Illinois High School Ass'n,* 351 F. Supp. 69 (N.D. Ill. 1972).

█ The underlying policy in invalidating sex classification regardless of the test applied is that eligibility to play in athletic competition must be based upon an individualized determination of ability to play regardless of the sex of the player. *Brenden v. Independent School Dist. 742, supra.* Moreover, under the due process clause of the Fourteenth Amendment, performers are entitled to an individualized determination of their qualifications, not a determination based on the qualifications of a majority of the broader class of which the individual is a member. *See Cleveland Bd. of Educ. v. LaFleur* and *Cohen v. Chesterfield County School Bd.,* cited as *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 644, 39 L. Ed. 2d 52, 94 S. Ct. 791 (1974). *But cf. Bucha v. Illinois High School Ass'n supra.*

*Discrimination in High School Athletics,* 57 Minn. L. Rev. 339 (1972); Comment, *Equality in Athletics: The Cheerleader v. The Athlete,* 19 S.D. L. Rev. 428 (1974); Comment, *Sex Discrimination in Interscholastic High School Athletics,* 25 Syracuse L. Rev. 535 (1974).

The out-of-state cases cited invalidating sex discrimination in athletic competition have done so without the benefit of the Washington constitutional and statutory provisions forbidding discrimination based on sex. Const. art. 31, Const. art. 1, § 12; Const. art. 9, § 1; RCW 49.60, and particularly RCW 49.60.010, and .030. *See also Hanson v. Hutt, supra; J.S.K. Enterprises, Inc. v. Lacey, supra.* We turn then to a consideration of Washington's own law also applicable when the Darrin girls were denied permission to play because of the WIAA regulation under attack.

■ Const. art. 1, § 12, the state's version of the equal protection clause, has been construed in a manner similar to that of the equal protection clause of the Fourteenth Amendment. *DeFunis v. Odegaard,* 82 Wn.2d 11, 37 n.16, 507 P.2d 1169 (1973), *vacated as moot,* 416 U.S. 312, 40 L. Ed. 2d 164, 94 S. Ct. 1704 (1974); *Markham Advertising Co. v. State,* 73 Wn.2d 405, 427, 439 P.2d 248 (1968). Such construction, however, is not automatically compelled. Const. art. 1, § 12 may be construed to provide greater protection to individual rights than that provided by the equal protection clause. *Carter v. University of Washington,* 85 Wn.2d 391, 536 P.2d 618 (1975).

■ Washington has used the rational relationship test in invalidating statutory classifications. *See Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 520 P.2d 162 (1974); *Thurston v. Greco,* 78 Wn.2d 424, 474 P.2d 881 (1970); *State v. Persinger,* 62 Wn.2d 362, 382 P.2d 497 (1963); *J.S.K. Enterprises, Inc. v. Lacey, supra. Hanson v. Hutt, supra,* in construing Const. art. 1, § 12, in light of the Fourteenth Amendment and the due process clause of the Fifth Amendment, held sex to be a suspect classification requiring a showing of a compelling state interest to uphold it.[7] The court quoted with approval

[7] In *Hanson v. Hutt,* 83 Wn.2d 195, 200, 517 P.2d 599 (1973), the court noted that in *Frontiero v. Richardson,* 411 U.S. 677, 36 L. Ed. 2d 583, 93 S. Ct. 1764 (1973), four Justices expressly found that classifications based on sex are inherently suspect. Three other Justices felt the Supreme Court should defer categorizing sex classifications as suspect,

the following from *Sail'er Inn, Inc. v. Kirby*, 5 Cal. 3d 1, 485 P.2d 529, 95 Cal. Rptr. 329 (1971):

> Sex, like race and lineage, is an immutable trait, a status into which the class members are locked by the accident of birth. What differentiates sex from nonsuspect statuses, such as intelligence or physical disability, and aligns it with the recognized suspect classifications is that the characteristic frequently bears no relation to ability to perform or contribute to society. . . . The result is that the whole class is relegated to an inferior legal status without regard to the capabilities or characteristics of its individual members. . . . Where the relation between characteristic and evil to be prevented is so tenuous, courts must look closely at classifications based on that characteristic lest outdated social stereotypes result in invidious laws or practices.
>
> . . .
>
> Laws which disable women from full participation in the political, business and economic arenas are often characterized as "protective" and beneficial. Those same laws applied to racial or ethnic minorities would readily be recognized as invidious and impermissible. The pedestal upon which women have been placed has all too often, upon closer inspection, been revealed as a cage.

*Hanson v. Hutt*, 83 Wn.2d 195, 199, 517 P.2d 599 (1973). The court held:

> With all of the foregoing considerations in mind, we hold that the classification based upon sex, contained in RCW 50.20.030, is inherently suspect and therefore must be subject to strict judicial scrutiny.

*Hanson v. Hutt, supra* at 201.

■ The Supreme Court of Washington has not yet expressly held that education free of discrimination based upon sex is a fundamental right within the meaning of Const. art. 1, § 12 so as to call for strict scrutiny of a

---

pending an expression of the will of the people on the equal rights amendment. The court in *Hanson v. Hutt* then noted: "The voters of this state approved the Equal Rights Amendment and it became article 31 of the Washington State Constitution on December 7, 1972." *Hanson v. Hutt, supra* at 200 n.3.

classification claimed to infringe upon that right. That in Washington, education (physical and cultural), free from discrimination based on sex, is a fundamental constitutional right, is a conclusion properly drawn from Const. art. 9, § 1 adopted in 1889. That article provides:

It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex.

*See Northshore School Dist. 417 v. Kinnear*, 84 Wn.2d 685, 753-61, 530 P.2d 178 (1974) (Stafford, J., dissenting).

The prohibition against sex discrimination contained in Const. art. 9, § 1, is emphasized by RCW 49.60.010, which provides:

The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of . . . sex . . . are a matter of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state.

RCW 49.60.030 also provides that the right to be free of discrimination based on sex is a civil right.

Thus state action in the form of a gender-based classification involving eligibility to play in high school sports would be invalid if it failed to survive an attack upon validity based upon the Fourteenth Amendment or Const. art. 1, § 12, by applying (1) the applicable rational relationship test, federal or state, or (2) the specialized strict scrutiny test or (3) Const. art. 9, § 1, and RCW 49.60.010 and .030. To what extent, if any, Const. art. 9, § 1, constitutes an absolute prohibition against discrimination based on sex or to what extent RCW 49.60.010 and .030 likewise constitute an absolute prohibition admitting of no exceptions need not be determined. Const. art. 31, the Equal Rights Amendment, adopted in 1972, makes such a determination unnecessary. In the absence of Const. art. 31, it might have been argued (as in the case of the Fourteenth Amendment and Const. art. 1, § 12) sex classifications are valid if they bear

a rational relationship to the purpose of the classifications especially if they survive the strict scrutiny test. Whatever doubts on that score might have been formerly entertained, Const. art. 31 added something to the prior prevailing law by eliminating otherwise permissible sex discrimination if the rational relationship or strict scrutiny tests were met.

When the Darrin girls were denied permission to play in the fall of 1973, Const. art. 31, § 1, Washington's Equal Rights Amendment provided:

Equality of rights and responsibility under the law *shall not* be denied or abridged on account of sex.

(Italics ours.)

Const. art. 31, provided the latest expression of the constitutional law of the state, dealing with sex discrimination, as adopted by the people themselves. Presumably the people in adopting Const. art. 31 intended to do more than repeat what was already contained in the otherwise governing constitutional provisions, federal and state, by which discrimination based on sex was permissible under the rational relationship and strict scrutiny tests. Any other view would mean the people intended to accomplish no change in the existing constitutional law governing sex discrimination, except possibly to make the validity of a classification based on sex come within the suspect class under Const. art. 1, § 12. *See* footnote 7, *supra.* Had such a limited purpose been intended, there would have been no necessity to resort to the broad, sweeping, mandatory language of the Equal Rights Amendment. *See* Comment, *Sex Discrimination in Interscholastic High School Athletics,* 25 Syracuse L. Rev. 535, 570-74 (1974).

The Federal Equal Rights Amendment (now ratified by 34 of the 38 states needed to make it effective), whose purpose is to render illegal action by states permitting discrimination based on sex (*See Singer v. Hara,* 11 Wn. App. 247, 256 n.9, 522 P.2d 1187 (1974), was intended to outlaw interpretations of the equal protection and due process clauses that permitted exceptions to the prohibition

against sex discrimination. Following an exhaustive study of the history and purposes of the Federal Equal Rights Amendment, in Brown, Emerson, Falk & Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women*, 80 Yale L.J. 871, 904 (1971), the authors stated: "[T]he guarantee of equal rights for women may not be qualified in the manner that 'suspect classification' or 'fundamental interest' doctrines allow."[8] A similar rationale and conclusion is applicable to the Equal Rights Amendment (ERA). As *Commonwealth v. Butler*, .......... Pa. .........., 328 A.2d 851, 855 (1974) points out after noting Pennsylvania's Equal Rights Amendment, which is similar to Washington's ERA "sex may no longer be accepted as an exclusive classifying tool."

Pennsylvania Equal Rights Amendment (Pa. Const. art. 1, § 28) reads:

> Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual.

In *Commonwealth v. Pennsylvania Interscholastic Athletic Ass'n*, .......... Pa. Cmwlth. Ct. .........., 334 A.2d 839 (1975), decided March 19, 1975, the court held invalid, as violative of Pennsylvania's ERA, the following bylaw of the Pennsylvania Interscholastic Athletic Association (PIAA):

> "Girls shall not compete or practice against boys in any athletic contest."

PIAA is a voluntary unincorporated association whose members include every public senior high school in the

---

[8] Three possible exceptions to the application of the Federal Equal Rights Amendment are discussed in Brown, Emerson, Falk & Freedman, *The Equal Rights Amendment: A Constitutional Basis for Equal Rights for Women*, 80 Yale L.J. 871, 904 (1971). *See also* Comment, *Sex Discrimination in Interscholastic High School Athletics*, 25 Syracuse L.J. 535, 573-74 (1974). These are the regulation of cohabitation in sexual activity between unmarried persons; protection of fundamental rights of privacy; and dissimilar treatment on account of a characteristic unique to one's sex. None of these exceptions require different treatment for athletes solely on the basis of their sex. *See* Comment, *Sex Discrimination in Interscholastic High School Athletics, supra* at 573.

commonwealth, except for those in Philadelphia, some public junior high schools and some private schools. PIAA regulates interscholastic competition in some 17 sports including football. The court explained:

There is no fundamental right to engage in interscholastic sports, but once the state decides to permit such participation, it must do so on a basis which does not discriminate in violation of the constitution.

The court refused to uphold the challenged bylaw on the basis that

men generally possess a higher degree of athletic ability in the traditional sports offered by most schools and that because of this, girls are given greater opportunities for participation if they compete exclusively with members of their own sex.

The court stated:

This attempted justification can obviously have no validity with respect to those sports for which only one team exists in a school and that team's membership is limited exclusively to boys. Presently a girl who wants to compete interscholastically in that sport is given absolutely no opportunity to do so under the challenged By-Law. Although she might be sufficiently skilled to earn a position on the team, she is presently denied that position solely because of her sex. Moreover, even where separate teams are offered for boys and girls in the same sport, the most talented girls still may be denied the right to play at that level of competition which their ability might otherwise permit them. For a girl in that position, who has been relegated to the "girls' team," solely because of her sex, "equality under the law" has been denied.

Continuing, the court said:

The notion that girls as a whole are weaker and thus more injury-prone, if they compete with boys, especially in contact sports, cannot justify the By-Law in light of the ERA. Nor can we consider the argument that boys are generally more skilled. *The existence of certain characteristics to a greater degree in one sex does not justify classification by sex rather than by the particular characteristic.* Wiegand v. Wiegand, 226 Pa.Super.Ct. 278, 310 A.2d 426 (1973). If any individual girl is too weak, inju-

874

ry-prone, or unskilled, she may, of course, be excluded from competition on that basis but she cannot be excluded solely because of her sex without regard to her relevant qualifications. We believe that this is what our Supreme Court meant when it said in *Butler*, *supra*, that "sex may no longer be accepted as an exclusive classifying tool."

(Italics ours.) *Commonwealth v. Pennsylvania Interscholastic Athletic Ass'n, supra* at 842-43. The court ordered that PIAA "permit girls to practice and compete with boys in interscholastic athletics . . ." including contact football, thus rejecting any distinction between contact football and noncontact sports. *See* A. Babcock, A. Freedman, E. Norton, & S. Ross, *Sex Discrimination and the Law: Causes and Remedies*, 1031-34 (1975).

### THE CONSTITUTIONAL PRINCIPLES APPLIED HERE

The court's findings make it plain Wishkah Valley School District's membership in WIAA "is a practical necessity" if it wishes to participate in a sports program. Finding of fact No. 3. WIAA acts through about 600 member schools, including "almost all, if not all, high schools in the state." Finding of fact No. 3. It has adopted "rules and regulations governing interscholastic sports and other activities." Finding of fact No. 1. Those regulations prohibit sports competition between member and nonmember schools. Finding of fact No. 3. WIAA specifically ruled girls "were prohibited from interscholastic contact football on existing boys' teams." Finding of fact No. 2. The court found that compliance with the ruling by a member is essential; otherwise "it could find itself with no opponents and therefore no interscholastic sports program." Finding of fact No. 3.

The interscholastic sports system controlled and supported by school membership and cooperation necessarily involving the use of public funds is state action within the rationale of *Brenden v. Independent School Dist.* 742, 477 F.2d 1292 (8th Cir. 1973); *Louisiana High School Athletic Ass'n v. St. Augustine High School*, 396 F.2d 224 (5th Cir. 1968); *Bucha v. Illinois High School Ass'n*, 351 F.

Supp. 69 (N.D. Ill. 1972); *Reed v. Nebraska School Activities Ass'n,* 341 F. Supp. 258 (D. Neb. 1972); *Haas v. South Bend Community School Corp.,* 259 Ind. 515, 289 N.E.2d 495 (1972); *School Dist. v. Pennsylvania Interscholastic Athletic Ass'n,* 453 Pa. 495, 309 A.2d 353 (1973).

The court found in challenged finding of fact No. 7 that:

> The classification in the WIAA regulation is not based upon sex *per se* but upon the nature of the game of football and the very real reasons (stated in finding of fact 6) why most girls should not play the game against boys.

Finding of fact No. 7 thus ignores other findings as well as undisputed evidence that WIAA regulations prohibited girls from playing on boys' football teams in interscholastic games regardless of the girls' ability to play and regardless of whether the school had a girls' football team. The classification was clearly one based on sex—not one based on ability to play. WIAA's ruling that no girls "could compete with the boys in interscholastic contact football" (finding of fact No. 5) illegally prevented the school district from permitting the Darrin girls to play—a permission it wished to grant—notwithstanding that "[a]ccording to their coach, both of the girls have in general been able to hold their own with the boys in practice sessions and would be allowed to play in interscholastic contests were it not for the W.I.A.A. regulation." Finding of fact No. 4.

The justification claimed for the challenged regulation is the *majority* of girls are "unable to compete with boys in contact football, and the potential risk of injury is great." Finding of fact No. 6. Furthermore, "allowing of girls to compete in contact sports with boys will result in boys competing on girls' teams resulting in disruption to the girls' athletic programs"; that therefore the challenged WIAA regulation "is reasonably calculated to accomplish a rational purpose." Finding of fact No. 10. *See also* finding of fact No. 9. There is no finding that what may be true for the majority of girls is true in the case of the Darrin girls (see finding of fact No. 10), or girls like them. As for the

risk of injury to the "average girl" the court found "the breasts could be adequately protected with proper equipment not currently available, and serious injury to the procreative organs is not a very substantial risk." Finding of fact No. 6. See finding of fact No. 9.[9] The court found, "the particular circumstances of this case strongly suggest that plaintiffs, Carol and Delores Darrin, are not being provided access to interscholastic sports equal to that provided the boys . . ." Finding of fact No. 10.

Boys as well as girls run the risk of physical injury in contact football games. The risk of injury to "the average boy" is not used as a reason for denying boys the opportunity to play on the team in interscholastic competition. Moreover, the fact that some boys cannot meet the team requirements is not used as a basis of disqualifying those boys that do meet such requirements. Instead, WIAA expressly permitted small, slightly built young boys, prone to injury, to play football without proper training to prevent injury. The very day the Darrin girls were denied permission to play, WIAA gave Wishkah Valley High School permission to permit one unqualified high school boy to play on its football team. No similar privilege was given to high school girls like the Darrin girls who, but for the fact they were girls, met the team requirements. Finding of fact No. 6, referred to in challenged finding of fact No. 7 as to the ability to play of the "majority of girls" or "average girl" is just as irrelevant as would a similar finding concerning the majority of boys or the "average boy" (finding of fact No. 8) in determining individual qualifications. *See Brenden v. Independent School Dist. 742, supra; Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 39 L. Ed. 2d 52, 94 S. Ct. 791 (1974).

■ Findings of fact Nos. 9 and 10 dealing with the possible disruption of the girls' athletic programs if girls

---

[9]In the May 26, 1975, issue of TIME, it is stated at page 41:
. · "Meanwhile *womenSports*, a new monthly dedicated to female athletics, reports that no fewer than seven women's pro football teams are now on the gridiron."

are permitted to play on boys' contact football teams in interscholastic competition is based on opinion testimony necessarily conjectural in character as to what might happen. There is no such evidence based on experience of Wishkah Valley High School because that school has never had any girls' contact football team. Finding of fact No. 8. Furthermore, the possibility of disruption has not prevented WIAA from approving boy-girl participation in noncontact sports. "[W]here there are mutual interests and comparative abilities," WIAA permits "girls and boys [to] compete with or against each other." Finding of fact No. 8. The opinion evidence on which defendants rely is the kind of evidence that has been elsewhere rejected as insufficient to validate sex discrimination in school athletic competition involving boys and girls. *Brenden v. Independent School Dist. 742, supra; Haas v. South Bend Community School Corp., supra.* Such conjectural evidence suffers from the infirmities of scintilla evidence which is insufficient to support a finding. *See* 5 R. Meisenholder, Wash. Prac. § 361, at 364 (1965). Moreover, evidence supporting a public policy contrary to that contained in constitutional and statutory mandate cannot be allowed to override such a mandate. Finding of fact No. 7 that the "W.I.A.A. regulation is not based upon sex *per se*," is unsupported by substantial evidence and cannot be upheld.

 In sum, the WIAA rule discriminating against girls on account of their sex violates Const. art. 31, if not the equal protection clause of the Fourteenth Amendment, Const. art. 1, § 12 and Const. art. 9, § 1. No compelling state interest requires a holding to the contrary. The overriding compelling state interest as adopted by the people of this state in 1972 is that: "Equality of rights and responsibility under the law shall not be denied or abridged on account of sex." *See also* RCW 49.60.010 and .030. We agree with the rationale of *Commonwealth v. Pennsylvania Interscholastic Athletic Ass'n, supra,* that under our ERA discrimination on account of sex is forbidden. The WIAA rule forbidding

qualified girls from playing on the high school football team in interscholastic competition cannot be used to deny the Darrin girls, and girls like them, the right to participate as members of that team. This is all the more so when the school provides no corresponding girls' football team on which girls may participate as players.

Reversed.

FINLEY, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

HAMILTON, J. (concurring)—With some qualms I concur in the result reached by the majority. I do so, however, exclusively upon the basis that the result is dictated by the broad and mandatory language of Const. art. 31, § 1, Washington's Equal Rights Amendment (ERA). Whether the people in enacting the ERA fully contemplated and appreciated the result here reached, coupled with its prospective variations, may be questionable. Nevertheless, in sweeping language they embedded the principle of the ERA in our constitution, and it is beyond the authority of this court to modify the people's will. So be it.

STAFFORD, C.J., and ROSELLINI and HUNTER, JJ., concur with HAMILTON, J.