# Commonwealth of Pennsylvania by Israel Packel, Attorney General, Plaintiff, *v.* Pennsylvania Interscholastic Athletic Association, Defendant.

46

Argued December 2, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., ROGERS and BLATT. Judge MENCER did not participate.

*Kathleen Herzog Larkin,* Deputy Attorney General, with her *Lawrence Silver,* Deputy Attorney General, and *Israel Packel,* Attorney General, for plaintiff.

*William M. Young, Jr.,* with him *W. Douglas Brown, Rod J. Pera,* and *McNees, Wallace & Nurick,* for defendants.

*Hubert Thurschwell,* for amicus curiae, American Civil Liberties Union—Greater Philadelphia Branch.

*Charles Potash,* Solicitor, with him *Wisler, Pearlstine, Talone, Craig & Garrity,* for amicus curiae, Lower Merion School District.

*Harriet N. Katz,* with her *Barbara A. Brown* and *Ann E. Freedman,* for amicus curiae, Pennsylvania National Organization for Women.

*Stephen C. Miller,* with him *Sylvia Meek,* for amicus curiae, Education Law Center.

OPINION BY JUDGE BLATT, March 19, 1975:

On November 13, 1973 the Commonwealth of Pennsylvania, acting through its Attorney General initiated suit against the Pennsylvania Interscholastic Athletic Association (PIAA) by filing a complaint in equity in this Court. The PIAA is a voluntary unincorporated association whose members include every public senior high school in this Commonwealth, except for those in Philadelphia. It also includes some public junior high schools as well as some private schools. The PIAA regulates interscholastic competition among its members in the following sports: football, cross-country, basketball, wrestling, soccer, baseball, field hockey, lacrosse, gymnastics, swimming, volleyball, golf, tennis, track, softball, archery and badminton.

The complaint here specifically challenges the constitutionality of Article XIX, Section 3B of the PIAA By-Laws which states: "Girls shall not compete or practice against boys in any athletic contest." The Commonwealth asserts that this provision violates both the equal protection clause of the Fourteenth Amendment to the United States Constitution and also Article I, Section 28[1] of the Pennsylvania Constitution, the so-called Equal Rights Amendment (ERA), in that it denies to female student athletes the same opportunities which are available to males to practice for and compete in interscholastic sports.[2]

The PIAA filed an answer and subsequently an amended answer, accompanied by new matter, to which the Commonwealth filed a responsive pleading. On May 28, 1974 the Commonwealth filed a motion for summary judgment under Rule 1035 of the Pennsylvania Rules of Civil Procedure, the motion being accompanied by ex-

---

1. Purdon's Pennsylvania Statutes Annotated erroneously cites the ERA as Const. art. 1 §27.

2. The complaint specifically exempts football and wrestling from the purview of this lawsuit.

hibits and affidavits, and it alleged that there are no material issues of fact in dispute between the parties and that the Commonwealth is entitled to judgment as a matter of law without the necessity of a trial. The motion was argued before six members of this Court on December 2, 1974.

It is well established that summary judgment should not be entered unless the case is clear and free from doubt. The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Davis v. Pennzoil Company*, 438 Pa. 194, 264 A.2d 597 (1970). But where there is no genuine issue as to a material fact, there is no logical reason for forcing the parties to go to trial. *Rose v. Food Fair Stores, Inc.*, 437 Pa. 117, 262 A.2d 851 (1970). After studying the pleadings and other material on the record in this case, we have concluded that it would be futile to conduct a trial. Article XIX, Section 3B of the PIAA By-Laws is unconstitutional on its face under the ERA and none of the justifications for it offered by the PIAA, even if proved, could sustain its legality. We need not, therefore, consider whether or not the By-Law also violates the Fourteenth Amendment to the United States Constitution.[3]

Article I, Section 28 of the Pennsylvania Constitution provides:

"PROHIBITION AGAINST DENIAL OR ABRIDGMENT OF EQUALITY OF RIGHTS BECAUSE OF SEX

"Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

---

3. For discussion of this issue, *see Schlesinger v. Ballard*, —— U.S. ——, 43 USLW 4158 (filed Jan. 15, 1975); *Kahn v. Shevin*, 416 U.S. 351 (1974); *Frontiero v. Richardson*, 411 U.S. 677 (1973); *Reed v. Reed*, 404 U.S. 71 (1971).

Since the adoption of the ERA in the Commonwealth of Pennsylvania, the courts of this state have unfailingly rejected statutory provisions as well as case law principles which discriminate against one sex or the other. In *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974) the court cast aside the presumption which had previously existed to the effect that the father, because of his sex, must accept the principal burden of financial support of minor children. The court there indicated that support is the equal responsibility of both parents and that, in light of the ERA, the courts must now consider the property, income, and earning capacity of both in order to determine their respective obligations.

In *Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974) the court extended to the wife the right to recover damages for loss of consortium, a right previously available only to the husband. The court there stated: "The obvious purpose of the Amendment was to put a stop to the invalid discrimination which was based on the sex of the person. The Amendment gave legal recognition to what society had long recognized, that men and women must have equal status in today's world." *Hopkins, supra,* at 93, 320 A.2d at 140.

Most recently in *Henderson v. Henderson,* —— Pa. ——, 327 A.2d 60 (1974) the section of the Divorce Law which permitted only the wife to receive alimony pendente lite, counsel fees and expenses was ruled unconstitutional. The court in broad terms proclaimed:

"The thrust of the Equal Rights Amendment is to insure equality of rights under the law and to eliminate sex as a basis for distinction. The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal rights and legal responsibilities. The law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or

woman." *Henderson, supra,* —— Pa. at ——, 327 A.2d at 62.

*Commonwealth v. Butler,* —— Pa. ——, 328 A.2d 851 (1974), filed on the same day as *Henderson,* held unconstitutional the provision of the Muncy Act which prevented trial courts from imposing a minimum sentence on women convicted of a crime. Only male criminals were subject to the minimum sentence provision.

The PIAA first attempts to distinguish those cases from this one in that they all involved some statutory right or at least some preexisting judicially recognized right which had been available to only one sex. It is asserted that there is no "legally cognizable right" to engage in interscholastic sports so that the PIAA By-Law does not fall within the purview of the ERA. We cannot accept this argument. The concept of "equity of rights *under the law*" (emphasis added) is at least broad enough in scope to prohibit discrimination which is practiced under the auspices of what has been termed "state action" within the meaning of the Fourteenth Amendment to the United States Constitution. In *Harrisburg School District v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 309 A.2d 353 (1973) the activities of the PIAA were found to be state action in the constitutional sense because its membership consists primarily of public schools and because it is funded by the payment of membership fees from public school moneys, and so ultimately by the Commonwealth's taxpayers, and from the gate receipts of athletic events between public high schools, involving the use of state-owned and state-supplied facilities. We believe, therefore, that the PIAA By-Laws are subject to the scrutiny imposed by the ERA. There is no fundamental right to engage in interscholastic sports, but once the state decides to permit such participation, it must do so on a basis which does not discriminate in violation of the constitution.

The PIAA seeks to justify the challenged By-Law on the basis that men generally possess a higher degree of athletic ability in the traditional sports offered by most schools and that because of this, girls are given greater opportunities for participation if they compete exclusively with members of their own sex. This attempted justification can obviously have *no* validity with respect to those sports for which only one team exists in a school and that team's membership is limited exclusively to boys. Presently a girl who wants to compete interscholastically in that sport is given absolutely no opportunity to do so under the challenged By-Law. Although she might be sufficiently skilled to earn a position on the team, she is presently denied that position solely because of her sex. Moreover, even where separate teams are offered for boys and girls in the same sport, the most talented girls still may be denied the right to play at that level of competition which their ability might otherwise permit them. For a girl in that position, who has been relegated to the "girls' team," solely because of her sex, "equality under the law" has been denied.

The notion that girls as a whole are weaker and thus more injury-prone, if they compete with boys, especially in contact sports, cannot justify the By-Law in light of the ERA. Nor can we consider the argument that boys are generally more skilled. The existence of certain characteristics to a greater degree in one sex does not justify classification by sex rather than by the particular characteristic. *Wiegand v. Wiegand,* 226 Pa. Superior Ct. 278, 310 A.2d 426 (1973). If any individual girl is too weak, injury-prone, or unskilled, she may, of course, be excluded from competition on that basis but she cannot be excluded solely because of her sex without regard to her relevant qualifications. We believe that this is what our Supreme Court meant when it said in *Butler, supra,* that "sex may no longer be accepted as an exclusive classifying tool." —— Pa. at ——, 328 A.2d at 855.

In its motion for summary judgment, the Commonwealth seeks various forms of broad equitable relief to enjoin other potentially discriminatory practices of the PIAA, which we cannot grant. The complaint, specifically addresses itself only to Article XIX, Section 3B of the By-Laws. Moreover, we believe that the other discriminatory practices, if any, probably derive directly from this particular By-Law.

Although the Commonwealth in its complaint seeks no relief from discrimination against female athletes who may wish to participate in football and wrestling, it is apparent that there can be no valid reason for excepting those two sports from our order in this case.

For the foregoing reasons, therefore, we issue the following

### ORDER

Now, the 19th day of March, 1975, the motion of the Commonwealth for summary judgment is granted to the extent that Article XIX, Section 3B of the Pennsylvania Interscholastic Athletic Association is hereby declared unconstitutional, and the Pennsylvania Interscholastic Athletic Association is hereby ordered to permit girls to practice and compete with boys in interscholastic athletics, this order to be effective for the school year beginning in the fall of 1975 and thereafter.

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

I dissent. In striking down the PIAA regulation here in issue on plaintiff's motion for summary judgment and without evidentiary hearing as violative of Article I, Section 28, of our Constitution, it is inescapable in my view that the majority has extruded prior decisions of our Supreme Court to the absonant conclusion that under no circumstances and under no conditions—with the possible exception of our interpersonal relationships—can there be a rational basis for distinction or classification

as between the sexes, a view not shared even by the plaintiff in this cause of action in excluding the "contact sports" of football and wrestling from the purview of the relief sought.

The Supreme Court decisions cited and quoted by the majority not only bind me but have my full support and approbation. In my view, however, they do not lend the controlling support attributed to them by the majority as each of said decisions was concerned with either a statute or a previously judicially declared right or duty applicable to one sex to the exclusion of the other. There remains the question of whether the constitutional provision in question is absolute or subject to the concept of rational classification in general contexts excluding or including the role of "state action" as a controlling or influencing factor.

In deciding this case on a motion for summary judgment, the majority, in my view, has acted too soon and gone too far. I would deny plaintiff's motion for summary judgment.