## Stark Adoption

*John P. Campana,* for petitioners.
*Michael Bresnahan,* contra.

GREEVY, *P.J.,* October 13, 1976—Petitioners in this action, Clifford B. Cole and Brenda Stark Cole, his wife, seek an order granting their petition for adoption of Jamison David Stark, the son of Mrs.

Cole. Jamison's natural father, David Worrick, has appeared in this action and responded to the petition.

The question before the court is whether the consent of the natural father of an illegitimate child is a necessary prerequisite to the child's adoption absent an order of involuntary termination of the father's parental rights.

From the testimony, we make the following

## FINDINGS OF FACT

1. Jamison David Stark, hereinafter referred to as "the child," was born out of wedlock on December 8, 1972.

2. Brenda Stark Cole is the child's natural mother.

3. David Worrick is the child's natural father.

4. The child is presently in the custody of petitioners, with visitation rights in the natural father.

5. There has been no involuntary termination of the natural father's parental rights, and the natural father has not voluntarily relinquished any such rights.

6. The natural father entered into an agreement with the natural mother on February 5, 1973 providing for the payment of support through the Centre County Domestic Relations Office. The agreement also provided that the father would have reasonable rights of visitation, and that the mother would not offer Jamison to anyone for adoption without first offering him to the natural father.

7. Visitation problems later arose and Mr. Worrick accumulated arrearages in his support payments. On October 14, 1975, the Court of Common Pleas of Centre County ordered him to pay $15 a

week for the support of Jamison and set visitation on the first and third weekends of each month. Mr. Worrick then resumed making support payments.

8. Although the child's natural parents never married, the natural father has attempted to play a positive and continuing role in the child's life.

## DISCUSSION

Petitioners have averred that under the Adoption Act of July 24, 1970, P.L. 620 (No. 208), 1 P.S. §101, et seq., the consent of the natural father is not a prerequisite to adoption of an out-of-wedlock child. In support, they cite section 411(3) of the act, which states:

"In the case of an illegitimate child, the consent of the mother only shall be necessary. The consent of the natural father of a child who was illegitimate at birth shall be required only if the relationship between mother and child was terminated by a decree entered after the marriage of the mother and the natural father."

The natural father contends that section 411(3) is violative of his rights under both the State and Federal Constitutions in that it arbitrarily discriminates on the basis of sex and operates to deprive a natural father of his right to a hearing before any action is taken to terminate his parental rights.

"Since the adoption of the ERA in the Commonwealth of Pennsylvania [article I, section 28, of the Pennsylvania Constitution], the courts of this state have unfailingly rejected statutory provisions as well as case law principles which discriminate against one sex or the other." Commonwealth of Pennsylvania by Israel Packel, Attorney General v. Pennsylvania Interscholastic

Athletic Association, 18 Pa. Commonwealth Ct. 45, 50, 334 A. 2d 839 (1975). The challenged statutory provision in the instant case is obviously one which discriminates on the basis of sex.

The Pennsylvania Supreme Court, in the recent case of Adoption of Walker, ——— Pa. ———, 360 A. 2d 603 (1976), considered whether section 411(3) remains valid in the face of the Equal Rights Amendment. In Walker, as here, the natural father of a child born out of wedlock challenged the adoption of his child by the natural mother's husband, without his consent. Recognizing that under section 411(3) the parental interest of an unwed father could be terminated "without regard to the strict standards which otherwise obtain when parental rights are to be involuntarily terminated," the court held that "[t]his distinction between unwed mothers and unwed fathers is patently invalid under the Pennsylvania Constitution." Walker, supra, 360 A. 2d at 605.

Walker controls our decision in this case. The parental rights of the unwed father of Jamison may be terminated only after a petition is filed and a hearing held on the question of his fitness as a parent, pursuant to 1 P.S. §312-313. In the alternative, if the court in the course of adoption proceedings finds that grounds exist under 1 P.S. §311 for involuntary termination, it may act to terminate those rights without a separate petition and hearing and without the consent of the parent in question: Adoption of Farabelli, 460 Pa. 423, 427, n. 1, 333 A. 2d 846 (1975). The evidence has not shown a settled purpose on the part of the natural father of relinquishing his claim to the child, nor is there any evidence of continued incapacity, abuse, neglect or refusal to perform parental duties. Therefore, the court will not act to termi-

nate the natural father's rights in these proceedings.

## CONCLUSIONS OF LAW

1. Section 411(3) of the Adoption Act of 1970, 1 P.S. §411(3), is invalid under the Equal Rights Amendment of the Pennsylvania Constitution, Article I, section 28, and Adoption of Walker, ——— Pa. ———, 360 A. 2d 603 (1976).

2. The consent of the natural father of an illegitimate child is required for adoption unless grounds exist for involuntary termination of the father's parental rights under 1 P.S. §311.

3. No grounds exist in the present case for the involuntary termination of the natural father's parental rights.

Accordingly, we make the following

## DECREE NISI

And now, October 13, 1976, the petition for adoption is hereby denied. Petitioners are given 20 days to file exceptions, at which time this decree shall be entered as a final order of court.