[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Plaintiffs are parents of Brian Kleczek (hereinafter referred to as "Kleczek"), who is seventeen years old. Kleczek is enrolled in South Kingstown High School which is a member of the Rhode Island Interscholastic League, Inc. (hereinafter referred to as "League"). The League is a non-profit corporation composed of a number of secondary schools, the majority of which are public schools. The League supervises and controls the various athletic programs conducted by its members. The League's rules and regulations are binding on it members. Rhode Island Interscholastic League Rules and Regulations, Article 25, Section 1 (1989-1991 Ed.) (hereinafter referred to as "Article 25, Section 1") prohibits boys from playing on the girls' field hockey team. Field hockey is not offered as a boys' sport.
Kleczek decided in 1990 to try out for the girls' field hockey team at South Kingstown High School. His parents supported his decision. The coach of the team and the players are not opposed to Kleczek's participation on the team. The school sought permission from the League to permit Kleczek to play, but the League refused pointing to Article 25, Section 1 which limits field hockey competition to girls. A formal waiver of that rule was then requested of the League. After a hearing, the League denied the waiver. As a result, Kleczek was relegated to the sidelines in 1990 and in fact served as a manager to the team.
On February 12, 1991, plaintiffs brought an action in the United States District Court seeking redress on the basis of separate federal and state law grounds. The federal claims were based on Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and the Equal Protection Clause of the Fourteenth Amendment. U.S. Const. amend. XIV. Plaintiffs sought an expedited hearing, but that was denied. Judge Ronald Lagueux held a preliminary injunction hearing on May 20, 1991. On August 1, 1991 he issued a memorandum and order denying the preliminary injunction on federal grounds, but he did not adjudicate with respect to the state law issues.
An action was then commenced in this Court asserting among other claims that the Article 25, Section 1 ban on Kleczek's participation on the girls' field hockey team violates the R.I. Const. art. I § II (hereinafter referred to as "Article I, Section II"). Plaintiffs' request for a preliminary injunction was heard before this Court on September 3 and 4, 1991. By agreement of the parties the action on the merits was advanced and consolidated into that hearing.
Article I, Section II provides in part that "(n)o person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws". Id. In addition to the due process and equal protection language, that section further provides that "(n)o otherwise qualified person shall, solely by reason of race, gender or handicap be subject to discrimination by the state, its agents or any person or entity doing business with the state".Id.
The Court will evaluate Plaintiffs' constitutional claim in three parts:
 (1) Is state action present under the facts of this case?
 (2) If so, what standard of review is to be utilized in determining whether the restriction of the League violates Article I, Section II?
 (3) When measured against said standard of review, is the League's restriction violative of Article I, Section II?
STATE ACTION
It cannot be seriously disputed that the "non-discrimination" provision of Article I, Section II requires "state action" for its proscriptions to apply. The "non-discrimination" provision expressly applies to discrimination ". . . by the state, its agents or any person or entity doing business with the state". It is equally clear that the League's prohibition against boys participating in girls' field hockey constitutes state action. The League is supported by membership dues of public schools and gate receipts from state facilities. The League's involvement with the state as a source of funding as above noted would clearly constitute state action within the context of Article I, Section II. See Gomes v. Rhode Island Interscholastic League,469 F. Supp. 659, 661 (D.C.R.I.), vacating as moot, 604 F.2d 733
(1st Cir. 1979); Attorney General v. Massachusetts ScholasticAthletic Association, 393 N.E.2d 284, 288 (Mass. 1979); andPackel v. Pennsylvania Interscholastic Athletic Association,334 A.2d 839, 842 (Pa. 1978). The League therefore must conform to the standards set forth in Article I, Section II.
STANDARD OF REVIEW
Article I, Section II, which was adopted in 1986 has yet to be interpreted by the Rhode Island Supreme Court. Therefore, in determining what standard of review to apply, the Court is mindful that this is a case of first impression in Rhode Island.
At the outset, the Court finds it helpful to categorize the standards of review that have been utilized with regard to the equal protection clause under the United States Constitution. Under federal equal protection theories three different standards of review are used depending on the classification drawn by the statute in question or the rights affected by the statute: strict scrutiny, intermediate, and rational relationship. State ERAS'Problems and Possibilities, 1989 U. Ill. L. Rev. 1123, 1132 (1989). The highest standard applies where a statute involves a "suspect" classification such as race. In such cases the statute is viewed with "strict scrutiny". Where a statute deals with a suspect class, the state must show a "compelling state interest" or the statute will be stricken as violative of the equal protection clause. Id. at 1132.
A second category of federal equal protection analysis involves statutes making distinctions based on sex. Such statutes are evaluated by considering whether the classification serves "important governmental objectives" which are "substantially related to achievement of those objectives". Id. at 1132 and 1133. The degree of scrutiny is often referred to as intermediate scrutiny.
The final category of review relates to statutes not involving suspect classifications such as economic classifications. Such statutes will be found to be valid if they are "rationally related" to any "legitimate interest". Id. at 1132.
Before the 1986 Rhode Island Constitutional Convention and the adoption of Article I, Section II, the Rhode Island Supreme Court adopted the intermediate approach to analyzing statutes drawing classifications based on sex. See, e.g., Waldeck v.Piner, 488 A.2d 1218, 1220 (R.I. 1985), State v. Ware,418 A.2d 1, 3 (R.I. 1980), both of which cite Craig v. Boren,429 U.S. 190 (1975).
With the adoption of Article I, Section II, the question posed is whether strict judicial scrutiny is now required, rather than intermediate scrutiny.
Article I, Section II of the Rhode Island Constitution provides: "No person shall be deprived of life, liberty or property without due process of the laws, nor shall any person be denied equal protection of the laws". R.I. Const. art. I, § II. In addition to this specific due process and equal protection language, Article I, Section II also includes a "non-discrimination" provision in the areas of race, gender and handicap.
In that Article I, Section II is not just an "equal protection" and "due process" provision but is also a "non-discrimination" provision, the Court considers it helpful to examine the manner in which other states have interpreted their constitutional measures pertaining to equal rights. Approximately seventeen states have enacted some form of "equal rights" protection. At least eleven of those provisions have been interpreted by their highest court. 1989 U. Ill. L. Rev. at 1123. These states have applied three different standards of review: intermediate scrutiny, strict scrutiny and absolute bar.
Three states, Utah, Virginia, and Louisiana, have found their respective equal rights amendments to require an intermediate standard of review. Id. at 1133-34. Five states, Massachusetts, Texas, Connecticut, Colorado, and Illinois, have applied the strict scrutiny standard to their amendments. Id. at 1135. Three states, Washington, Pennsylvania, and Maryland, have absolutely barred gender discrimination. Id. at 1137.
The equal rights amendments that have been interpreted to apply an intermediate standard of review are distinguishable from the "non-discrimination" provision of Article I, Section II. It should be noted that Utah adopted its ERA in 1896. Through aGlass Darkly: A Look at State Equal Rights Amendments, 12 U. Suffolk L. Rev. 1282, 1311 (1978). Such a fact casts doubt upon its mandate to create true equality given historical gender discrimination. The language used by Louisiana and Virginia is less direct and demanding than the language of other "equal rights" provisions. For example, Louisiana's amendment provides that discrimination is impermissible only if conducted arbitrarily, capriciously, or unreasonably. Id. at 1310. Virginia singles gender out from among the other protected classes and specifies that the mere separation of the sexes may not be considered discrimination. Id. at 1311. Clearly, the provisions in these three states do not equate to the unconditional "non-discrimination" provision adopted in 1986 as Article I, Section II.
Most states have applied a more demanding standard of review. Most of these have applied the strict scrutiny test which requires that the classification serve a "compelling governmental interest". Attorney General v. Massachusetts ScholasticAthletic Association, 393 N.E.2d 284, 289 (Mass. 1979). In fact, in that case, the Supreme Judicial Court of Massachusetts considered the very same issue which is being considered here: does an interscholastic association rule prohibiting boys from playing on a girls' field hockey team violate rights under a state equal rights amendment? The court held that the rule must be viewed with strict scrutiny in a constitutional tier at least as high as race. Attorney General at 291.
Other states, Washington, Pennsylvania, and Maryland, have interpreted their ERA's to absolutely bar gender discrimination. 1989 U. Ill. L. Rev. at 1138. Under this interpretation, no classification based on gender is permitted. Darrin v. Gould,540 P.2d 882, 890 (Wa 1975) and Packel v. PennsylvaniaInterscholastic Athletic Association, 334 A.2d 839, 843 (Pa. 1978).
The Court rejects the position that the "non-discrimination" provision in Article I, Section II should operate as an absolute bar to gender discrimination. It is hard to believe the Rhode Island Supreme Court would adopt such a rigid position. At the same time, it is now unreasonable in view of the adoption of Article I, Section II that an intermediate standard of review continues to be utilized. Protection from discrimination on the basis of gender is now constitutionally mandated, not merely conferred by statute. Further, such protection against discrimination on this basis is placed alongside race thus making it a suspect classification. It seems illogical that given Article I, Section II that the standard of review should not be that presently existing with respect to race. Moreover, to apply intermediate review with respect to a gender classification, as was historically done under equal protection analysis, would ignore the unequivocal "non- discrimination" provision contained in Article I, Section II. Accordingly, this Court concludes a strict scrutiny standard should be applied with respect to gender classifications — i.e. a compelling state interest must be shown to justify a classification on the basis of gender.
Contrary to defendants' assertion, this Court is not creating rights not conferred under the Rhode Island Constitution. While defendants claim that Article I, Section II is simply a "due process" and "equal protection" measure, that assertion ignores the fact that said section's title labels it a "discrimination" measure as well.[1] More importantly, that provision unequivocally bars discrimination on the basis of race, gender or handicap. Whether that sentence of the section is labeled an "equal rights" or "non-discrimination" measure is unimportant.[2] If a "non-discrimination" clause such as that found in Article I, Section II were included by amendment into the equal protection clause of the federal constitution, it strains belief that the federal courts would not view the classification by gender as suspect requiring strict scrutiny as the standard of review.
APPLICATION OF STANDARD
The Court, therefore, will apply a strict scrutiny test in determining whether the Article 25, Section I prohibition against boys participating in girls' field hockey is unconstitutional under Article I, Section II. The question to be asked in that regard is whether a compelling state interest has been demonstrated justifying the classification based on gender.
In that regard, the issue under consideration by the Court is the same issue that was presented to the Supreme Judicial Court of Massachusetts. That court ruled that classifications based on gender without reference to actual skill echoes "archaic and overbroad generalizations". Attorney General, 393 N.E.2d at 293. The court further reasoned that less offensive and better calculated alternatives exist for promoting the purported interest in advancing girls' athletics, than a blanket ban on boys' participation. Id. at 294. For example, the court stated categorization based on height, weight or skill, rather than gender, could be applied to the same purpose.[3] Id. at 295. Also, the court noted a system of handicapping or a rule limiting the number of boys on girls' teams could be employed to accomplish the same goals. Id. at 296. Finally, the court concluded that its decision would avoid the long term harmful effects of perpetuating a psychology of "romantic paternalism" brought about by the "no boys" rule. Id.
The issue in this case is classification based on gender. The League's policy is not insulated from scrutiny simply because it discriminates against males rather than females. See,Mississippi University for Women v. Hogan, 458 U.S. 718 (1982) and Craig v. Boren, 429 U.S. 190 (1976). The burden of providing the legitimacy of the classification must be borne by the party seeking to uphold it. Mississippi University forWomen at 724. To carry the burden, an "extremely persuasive justification" for the classification is required. Id.
While there is no general right to play field hockey, once it is made available as part of defendants' programs, it must be open to all. See, Brown v. Board of Education, 347 U.S. 483, 493 (1954); Hoover v. Meiklejohn, 430 F. Supp. 164, 169 (Colo. 1977). It is up to the League and the remaining defendants to show some compelling justification for affording girls the opportunity to participate in field hockey while denying boys the same opportunity. That simply has not been done.
Where the governmental objective of a rule reflects "archaic and stereotypical notions" to "`protect' members of one gender because they are presumed to suffer from an inherent handicap or to be innately inferior, the objective itself is illegitimate".Mississippi University for Women, 458 U.S. at 725 (emphasis added).
Of course there are physical differences in athletic potential between high school aged boys and girls. Boys may tend to be bigger and stronger, girls may have better balance and agility. Nevertheless, whatever the League or the other defendants have proffered as justification for the ban of boys is based on archaic and overbroad generalizations and assumptions about female athletic ability.
Providing girl-only competition in field hockey through a blanket exclusion of boys does nothing to benefit girls. If anything, it is counterproductive and simply reinforces the insidious notion of female inferiority. In any case, the objective of increasing female participation through a measure of "affirmative action" is not viable justification at this time. In 1971 there were no girls' interscholastic sports in Rhode Island. Today thousands of Rhode Island high school girls compete in a wide variety of sports. A complete bar to boys' participation in girls' field hockey is totally out of proportion to any danger of girls being displaced from athletics. The Court certainly cannot accept such a disfavored classification under Article I, Section II when less offensive and more reasonably calculated alternatives exist. Attorney General, 393 N.E.2d at 294.
Field hockey is a unique sport, one which Brian Kleczek has a sincere interest in pursuing. It is clear that he presently has no opportunity within Rhode Island to participate in an organized student field hockey program. His only opportunity in that regard is through the girls' team at South Kingstown High School which engages competition through the League. Barring him from participating causes him harm which cannot be cured by any action at law.
Since the defendants have not offered any compelling state interest for the outright ban on boys' participation in the girls' field hockey team, Kleczek cannot be barred because he is male. Kleczek is entitled to try out and, if selected, to participate on the team. The public interest is served by affording Kleczek his constitutional rights in that regard.
CONCLUSION
Accordingly, the Court finds the classification contained in Article 25, Section 1 to be unconstitutional under Article I, Section II.[4] The plaintiffs have also demonstrated to the Court's satisfaction that Kleczek will suffer irreparable harm if he is barred from participation in girls' field hockey. Moreover, the public interest will be served by recognizing the constitutional right at issue in this case. The Court therefore grants plaintiffs' prayer for a permanent injunction whereby the League and other defendants under the authority of the League's Rules and Regulations as presently constituted are:
1. restrained and enjoined from prohibiting Kleczek's participation in interscholastic field hockey, and
2. restrained and enjoined from prohibiting the South Kingstown High School field hockey team from participation in interscholastic competition in the event Kleczek becomes a member of said team.
Counsel shall prepare a form of judgment consistent with the Court's decision.
[1] The language of the equal rights amendments adopted by the various states varies considerably. Some states' provisions are expressed in terms of equal protection. Others utilize language to the effect that equality of rights shall not be abridged on the basis of sex. It cannot be seriously disputed that Article I, Section II contains both an "equal protection" and "due process" provision, and a separate "non-discrimination" provision which is the equivalent of an equal rights provision.
[2] Each party asserts support for its position by turning to records of the Constitutional Convention which approved Article I, Section II for submission to the voters. Certainly, an argument can be made for their respective positions by turning to selected parts of the transcript of the Plenary Session. Nevertheless, that arm of the Convention that considered this measure — the Citizens Right Committee — in referring the matter to the full convention noted that its intent was that the state should not permit discrimination on the basis of gender. 1986R.I. Constitutional Convention Journal, p. 26, (June 5, 1986). The Committee further concluded that it recommends passage by the full convention to ensure that the state will not tolerate discrimination on the basis of gender. Id. at 27. However, the Committee perceived the measure and/or how individual delegates perceived it diminishes in importance to the clear, unequivocal language contained in Article I, Section II which was ultimately adopted by the convention and thereafter approved by the voters.
[3] The Court finds it noteworthy that the coach of the South Kingstown High School team does not find Kleczek himself to pose a hazard if he is permitted to compete with the girls.
[4] Plaintiffs also assert that the classification presented in Article 25, Section 1 is prohibited by R.I.G.L. § 16-38-1.1 which forbids sexual discrimination in Rhode Island schools. The Court need not address that argument since the Court has found the classification to be unconstitutional.